Do we have somebody there for Elliot-Park? Yes, Your Honor. Good morning. Joseph Horry for Ms. Elliot-Park. We thought you were there. We see you now. What time is it in Saipan? It's about 6.30 in the morning. Well, you look remarkably... Awake. Awake. Much better than I would look at that time. Appellant being... Right, so this is Mr. Huseman goes first. Now, I don't know if you're going to be able to see Mr. Huseman. Is he going to be able to see Mr. Huseman? Yes. Well, step to the left, then, and proceed. You don't need to stand there if you don't want to, Mr. Horry. If you can see the video by sitting down, you can go ahead and sit. I just wanted to make sure you were there. That's fine. I'm here, Your Honor. Okay. Very good. May it please the Court. Good morning, Your Honors. My name is Braddock J. Huseman. I'm an assistant attorney general for the Commonwealth of the Northern Mariana Islands, and I represent the Department of Public Safety police officers who are involved in this lawsuit. This is a qualified immunity interlocutory appeal stemming from the district court's denying my client's request to dismiss the equal protection and conspiracy claims contained within her lawsuit. I have two points I would like to make today on oral argument. The first is that Ms. Park Elliott received the constitutional rights she was entitled to. She received police protection. She was an acting victim. Right. They did respond. All right. It wasn't a situation where they said, you go, 911, what's your ethnicity? Oh, sorry, we're not coming, okay? So we don't have that going on. They came out to the scene. Yes, Your Honor. But you do have a situation here where everyone seems to say that this Mr. Bogalta, is that how we say it? Bogalta, yes, Your Honor. That he's drunk. A lot of people say he's drunk, including the doctor that doesn't have a dog in the fight. And the officers say he had not been drinking. So I guess, assuming that they did respond, but why isn't it a violation of the plaintiff's right to equal protection when the police refused to investigate his sobriety because of Bogalta's ethnicity?  I would say that the police did investigate the sobriety. They chose not to arrest. I understand, Your Honor. He said he had not been drinking. When you say investigate, they gave him a touch-your-nose test? No, I don't believe they did. Did they investigate by making him walk the line? No, Your Honor, I don't believe so. Did they investigate by smelling his breath? I believe that did happen, Your Honor. Did they investigate by taking a blood test? No, Your Honor. Mule sample? No, Your Honor. Resalizer? No, Your Honor. Under Commonwealth law, it is permissible for the arresting officer, if he chooses to arrest, to testify. All those requirements wouldn't be needed if there's probable cause, and Ms. Park alleges there was probable cause to arrest this individual. If there's probable cause under Commonwealth law, the police officer can testify in open court from his experience that that individual was drunk. But they said he wasn't, and there's a whole lot of people that say he had been drinking. That's true, Your Honor. They didn't give him a ticket. No, they didn't. So they would never be called upon to say one way or the other. Exactly, Your Honor. And our point is that there is, once the police arrive and show up and do a preliminary investigation, it is still within their discretion whether to arrest or not. Now, the facts of this case, they're taking it as true. What if we pull out the tape, and then they're saying to Barbota, you know, because you are one of us, we're not going to let you go. Would that change the facts? Well, I don't think it would, Your Honor, because that isn't discrimination against her. That's discrimination in favor of somebody else. They're not doing it because she is. I believe she's Korean. For the purpose of this, we'll assume she is. But are those really different claims? Are they flip sides of the same coin? I would concede they could be flip sides of the same coin, but I would also concede that if I'm trying to do you a favor, that is not necessarily racial animus towards somebody else. In other words, so you feel in the sort of old south, and you know, you find that your buddy, you know, your second cousin, twice removed, happened to run over this black guy, and you say, well, I'm going to let you go because you're one of us. Well, that's okay. I mean, that's not racial animus. That's just being safe. I would say that that, first of all, is not okay. But I would also say that. No, I don't mean, I'm not asking for moral approval here. We're talking about equal protection. When I say okay, I'm limiting it. Nobody says any of this is okay. Is it conceivable that there could be a constitutional right, well, that a person could be denied equal protection on a failure to investigate? I mean, we know we have cases where they're denied police services or denied protective services. This is not necessarily that case. But is it conceivable to you that there could be a right to have the police, you know, equally investigate cases and not deny that because of your ethnicity? Sure. I think there are cases like that. Was that a clearly established right? No, I don't believe. In this case, no, I don't believe so. And I believe this case is on two levels. First of all, I don't believe that is the case because there is that established right when the police officers are tacitly allowing that kind of violence. And when the police officers know, in most of these cases we'll see, there's a group, either women in the domestic violence case or some minority that there's violence committed against those individuals. And the police are either allowing it or tacitly acknowledging it and are not stopping it. And certainly if there's not an investigation there, that is a problem. There's a disconnect here in that. . . Well, the right that she's trying to say is, as a Korean, I have a right. . . I don't have a right for the police being perfect, but I have a right to have my case investigated just like an ethnic NATO or whatever. Sure. She has a right to. . . I believe that when the police show up and they do the interviews and they perform whatever task they're doing, that generally you do have a right to that sort of investigation. Now, in this case, it's alleged that the police just worked out that she wasn't drinking or that Mr. Bravato wasn't drinking. But in this case, I don't think that there is a disconnect because of what we're talking about. There's not violence committed against any individual. This is a random traffic accident. So if we go . . . if the court goes with that kind of analysis . . . That doesn't really quite work. I mean, let's say, for example, that they passed a law. So it's not clear what's going on. You know, anybody who's of a certain ethnicity, Mr. Chamorro in this case, but you could pick whatever, who runs a red light will not be prosecuted. It's illegal to run a red light unless you happen to be white or black or Chamorro or whatever. And so what that does is it makes it more dangerous for everybody else to go through green lights because you never know when some guy's going to run a red light with impunity. And why is this very much the same kind of thing? They're saying, look, we are in danger. We're running the highways. All these guys are running around driving recklessly. And the police have a policy of not enforcing the law as to them, which encourages them to drink and drive. And, you know, apparently the guy wasn't just drunk. He was, from all accounts, he was a real menace on the road. I don't dispute any of that. I would say, and this is the difference. Have the officers been disciplined? That's not in the record and it's outside. But I believe one of them is, at least two of them, I think all three of them are no longer with the force. One of them is now in Rota and one is in Seattle. And I'm not, I think the other one is on Saipan but not employed anymore. But I could be wrong about that. It isn't in the record and I might be mistaken. I don't believe that to be the case. Are they not there because they were fired? I believe that is the case. Or did they just get better jobs? No. Well, no, I don't believe they got better jobs. Well, they might have now, but I believe they were let go. To answer your question, I think that it gets to who's the proper plaintiff. In that case, there are individuals, whoever the disfavored minority there. So I would be a disfavored minority because I'm not a local. If I'm getting arrested for driving through a red light in your scenario, well, then my liberty interest is at stake. And the only reason I was pulled over. I'd be a lot more worried about my life interest being at stake by being the guy who drives through the green light and gets hit. Sure. By somebody who knows he's not going to get in trouble if he runs a red light. Right. That would be. I agree with that, Your Honor. But what I would just say is that I believe there are proper plaintiffs, and in that case there are individuals who didn't get a correct investigation isn't the proper plaintiff. There is a proper plaintiff in Ms. Park's complaint. It's the individual later that night who was arrested. He was not a person of Northern Maryland's descent that takes care of this. That person's liberty interest was taken away. That was an obvious one, but there's a less obvious problem here. And that is that the population generally has not been given the protection to which they are entitled under the law, at least with respect to CNMI drivers. So if you have CNMI drivers who are drunk, then the public has been deprived of public good on the basis of racial reasons. And I would. In which case, I think your real argument is Ms. Park is only part of a larger group and doesn't have any more standing than anybody else. She hasn't been targeted by this. That's correct, Your Honor. And to get back to Judge Callahan's question, because I'm almost out of time, I just wanted to cover something. If you believe this to be established right, the case law in the United States from about the early 80s on is quite replete with cases just like this, where there's a due process lawsuit instead of an equal protection lawsuit. And the police officers come across a drunk individual. They do an investigation. They decide that that person either isn't drinking or they're not going to do anything about it. They let that person go. He gets in an accident a mile down the road, kills two people in a family of four, and those injured people sue the government. And then the courts uniformly have held that that isn't a due process clause. That's Descheny, right? Pardon? That's Descheny. That is Descheny. And what Ms. Park is trying to do is circumvent the rule in Descheny, which is that the Constitution is not a minimum guarantee of rights between citizens. It's the Constitution protects the citizens from the government, not citizens from citizens. So in those cases, you have causation. In this case, you have no causation. The police officers would have been reasonable in believing that if they are at a roadside stop, they come across Mr. Rabauta and let him go, there wouldn't be any liability. In this case, we're trying to attach liability to them after the fact, when there is no causation, and that's why I say that. But there are concerns here that are implicated. If you are involved in that kind of accident and you then go to sue, it's a big help if the guy on the other side gets charged with drunk driving. Your recovery is bigger. If he's insured, you get less of a fine from the insurance company. If he's not insured and has assets, I have no idea what the story is in this case, but you have a much easier time recovering in a civil lawsuit if the police do what they're supposed to do, which is to identify. They're on the scene. They have the tools available to identify whether somebody is a drunk driver or not and to bring the legal process to bear to not just have people be witnesses of it, but actually convict him of the crime. If he gets convicted of drunk driving going out of that incident, that is a big plus in terms of time and amount of recovery and litigation. So why isn't that enough of an interest that Ms. Park has to say she is a proper plaintiff to bring this case? I think that's an interest. I don't think that that rises what happened to a constitutional clause. No, without a standing, though. Okay. Without a standing. Without a standing. That is, I would say that that is, she has that, but she doesn't have any more need than any other individual who's injured in an accident. I mean, you get a fender bender. It's the same problem. You get the ticket issued in your name. If the other person who's at fault gets the ticket, it's easier, too. So if the cops, police officers show up to any accident and don't issue the ticket, every time they don't issue a ticket and there's probable cause to do it, that's a constitutional lawsuit waiting in the entire Ninth Circuit. I guess the court is free to do that. I'm not sure that's, I don't believe that that rises. Your argument here is it's not clearly established, and so under what Pearson v. Callahan you can dispose of it under the second prompt. I think you could dispose of it under the second prompt or the first. But we could also still find a clearly established right at this point and go forward. Yes, Your Honor. But I would say that under either of the prompts, my argument is that under either of the prompts, it qualified immunity, they're entitled to qualified immunity under either of the prompts. And I know I'm over, so I don't. Okay, thank you. We'll hear from the court in a second. Mr. Horry. Good morning, Your Honors. May it please the court, Joseph Horry representing the plaintiff and appellee Aja Park-Elliott. Can you hear me clearly? No problem at all. Okay. First of all, I would point out that we're here on an appeal from the denial of a motion to dismiss. At this stage of the proceedings, we take the allegations in the complaint as true. I point that out particularly because most of the cases that have been cited by both parties in this matter, particularly ones where claims like my client's have been rejected, have been decided at the summary judgment stage where there's a requirement of some evidentiary production that we don't have at this point. For the purposes of this appeal, then, at this stage, we take it as true that the driver was drunk, there was pervasive evidence that he was drunk, that not only was he not arrested, but the ordinary investigative steps that would, according to the regular police procedure, have been done in that situation were not done. In one instance, even evidence was a report was falsified, and that this was done intentionally. The reason it was done was because of racial discrimination and or an invidious, irrational class of one discrimination. All that is taken as true. Counsel, is it found within your complaint that you allege that Ms. Park was discriminated against because of her race? We allege both, Your Honor, that she was discriminated because of her race and because of the race of the other driver. Okay, so part of your allegation is that the police didn't charge this because she was Korean. Yes, that is part of the complaint. Do you see those claims as different, the claim that they disfavored her because she's Korean as opposed to the claim that they favored him because he is Chamorro? No, I'm inclined to see it as Your Honor expressed it earlier. It's the flip side, two sides of the same coin. I suppose those two sides converge in this situation and maybe have a case of double, double discrimination, discrimination in both directions. It might be possible to have one and not the other under different facts, but in this case we have both. You are alleging both? We are alleging both. Okay. Mr. Hoy, I have a question. It seems to me that you weren't denied police services. What you were denied was police investigation services. They did respond. They took everyone to the hospital. They did all of that. Can you cite me a case that clearly establishes the right for provision of police investigation services on a non-discriminatory basis? I can, Your Honor. There are several cases that we cited in our brief. There's a Hawk v. Perillo. There's a Roman v. City of Reading, Smith v. Gilpin County, Colorado. There was the Modi case. They don't seem to be exactly on point, though. They don't seem to be exactly on point. Well, in all of those cases, Your Honor, the allegation was the same as in this complaint, that the police discriminated in their investigative response. I know we've had other cases here in the Ninth Circuit, I think in Navarro and Ballesteri and some others, where the police failure was before the fact, that they didn't protect somebody before something happened. This is at the other end. This is after the fact. These are all after-the-fact investigative cases. Let's narrow this a little bit. I'm assuming that you would concede that there's no established right that someone can tell the police how to do all stages of their investigation. Correct. I would agree with that. All right. And there wouldn't be no clearly established right that someone's prosecuted, because once you get to the prosecutors and they decide whether they charge someone or not, the prosecutors are entitled to absolute immunity, right? Yeah. We don't claim any absolute right to prosecution or to an arrest or even an absolute right to an investigation. The only right that we claim here is a right to equal treatment, to equal protection, that the police do in this situation the same as what they would do for anyone else, absent invidious discrimination in this situation on these facts. But police don't have to do the investigation exactly the same each time. I mean, there could be cases where they wouldn't need to take a test, or I think as the appellant has argued, they could ascertain, say perhaps as a point of judgment, that, yes, the person was drunk, they were falling down, there were a number of people there that saw them drunk and they could all testify at trial and they could make a determination that they felt that that was sufficient. So, you know, I mean, I'm trying to decide here, you know, how do we define what this right is? Since you can't, you know, I think we agree that you can't tell the police how to do every investigation. They're entitled to manage their investigations and have some deference on that. And then at the other extreme, we would probably all agree that you can't, they can't come out there, if they had come out there and said, oh, Mrs. Park, you're Korean and Mr. Barbota is a native here, we don't investigate crimes like that because you're Korean. All right, we're, you know, but we've got something kind of in between here. And clearly just because the officers are idiots and they don't do, or they're lazy and they don't do what they have to do, that therein doesn't make a constitutional violation. So I'm trying to find, you know, what is this clearly established right to police investigations? How do you define it? And what case do we have out there that would have told the officers that they had to take a blood test? Your Honor, I don't think we're so much between those two extremes, is that we're a whole lot closer to the second example that Your Honor mentioned, of the officers coming out and saying, and I think the difference is they didn't say it out loud, that we're not going to investigate this because of who you are and because of who he is. They didn't come out and say that out loud. And that's the only difference. That is essentially what happened. That is the decision that they made and that is the reason for which they made it. And I think that is the end of the spectrum at which the allegations in this case fall. And so the right that we're asserting there is not necessarily through an investigation. We know what you're saying because there was another accident where they did investigate. Is that how we know that? That is one part of the larger picture, Your Honor. Yes, I can't say that one accident all by itself doesn't establish it. But the allegation and the complaint is that that is the reason, that there was intentional racial and irrational discrimination in this case. And that is the point at which we think the constitutional right kicks in, is that you don't have that that intentional discrimination is a clearly established violation of the Equal Protection Clause. I think that's what this court has held. It was the Flores v. Pierce. This court held that the right to be free from racial discrimination is so well established, so essential to the preservation of our constitutional order, that public officials must be charged with knowledge of it. And I think not only are they charged with knowledge of it, it's in their own code of conduct, that they must be strictly impartial towards all persons, whether suspects, victims, all persons coming to their attention. There's to be no favoritism, no racial or national origin discrimination in any of the provision of their services, whether investigative or arresting or whatever they undertake in the course of their duty as police officers. It's all to be undertaken with strict impartiality. That's that is clearly established in their own code. It's clearly established in the in the law of the circuit as well. So I can't imagine what this case would look like at the summary judgment stage if we get that far. I mean, in a complaint, you can allege a racial animus in the abstract. And I'm still trying to find I've got a complaint upon me. I can't find the exact paragraph where you have that allegation. Maybe you can give it to me at some point. But I guess you can allege it. I don't even quite know whether that's a factual allegation or I guess it's a factual. You're you're you're alleging something about what's going on. So is this is your position that this is a policy of the police department? Well, is it a the D.C. particular officer or acting with this animus or which is it? It's both. We've alleged that the particular officers were acting with this animus. We've also alleged there's a policy in the police department. So you have essentially a Monal claim. I believe so. OK. I'm sorry. The policy of the police department is not to arrest people who have have injured Koreans or not to arrest people who are natives of CMI. I don't know that we go so far as to call it a policy. But it is a there's a pervasive practice in any event that the let me if you could give me a second to find the allegation. I think it is. It's not specific to Koreans. I know I can say that. If the problem is, is that is that native police officers will not arrest natives of CMI, then how does Mrs. Park distinguish her claim to equal protection from every other citizen on the island? They let they don't arrest this guy. They put him back out on the road. He's a danger to everybody on the road and he doesn't discriminate between Koreans and and native drivers. And so why isn't why isn't her claim then indistinct from everybody else in the Commonwealth? Because she, in that instance, was a victim of the accident and the victim of the crime. She is a person to whom the protection of the laws runs at that moment. There's no evidence that he was stopped earlier in the night and then let go. They put him back on the road. She's unhappy about that. She is in any more danger from him than everybody else that's back on the road. Well, this is not a put him back on the road situation. There's no allegation and we have no indication that he was ever stopped by anybody prior to this incident. You are denying that. I mean, you are claiming that she was that she was denied a public a public good. And the public good is is the protection because of the racial identity of the perpetrator. Yes. If that's true, then I'm still then I'm still struggling to try and figure out how her claim is distinct from the claim of every other person on the island. Well, I would say because because in this case, she was she was the one that he hit. She was the one that was the victim of the accident. That's in the past. That's a sunk cost. Right. That's happened. That's that's that's that has happened. But but at that point, the she's the person entitled to to to the protection of the laws. And the protection of the laws in this in this instance is not limited to just protecting you beforehand from something to prevent something from from happening to you. I think when we look at the at the one of the term that the Chinese term of police protective services or the constitutional language itself, the protection of the laws, the laws protect us not just by being in the books, the laws protect us by being enforced. And so if the law against theft is not enforced against the man who steals from me, if the law against assault is not enforced, if there's no investigation of someone who who beats me up or if there is no I'm not protected by the law against theft, I'm not protected by the law against assault. You didn't like my theory. Excuse me. You wouldn't like my theory that by not investigating, they made it more difficult for us to sue. And that's how she has a particular biased interest. Well, that's true. I haven't thought of that, but that is I mean, that does give her additionally. You know, that's that's it's up to this particular individual to her. That's individual to her. I do agree with that. I'm glad I managed to persuade you. It took two tries, but I knew I could get there. Thank you. You're out of time unless there are other questions. Thank you very much. As the court hit upon, I just want to make a few quick points. And I think the court acknowledges that a difference in degree at some point will become a difference in kind. We would submit that this isn't this. This case, as it was played, isn't close to the cases that were cited by Applebee's. This is close to the case and that if the court goes or if the court decides that an individual is entitled to, if there's no causation, just like there is here, that every time there's an accident, the police show up. If they decide not to ticket, if they decide not to arrest some individual ticket, whatever it is, it's true that that person, if there's a fender banner, will not get the benefit of that. There's a flip side to this. I understand your concern about floodgates and all those things. But let's say they're right. Let's say the plaintiff is right. In fact, I don't know. I've been to CNMI only very briefly, to South Bend only very briefly. And I'm in a very nice place, but I have no idea about the police practice or anything else. But let's say they're right. Let's say, in fact, there is an unwritten policy or a practice for them to go right on wrongdoers, including traffic matters, that happen to be of concern to us. That's really a terribly serious charge. And can we really dismiss something like that at the 12B stage, at the motion-to-dismiss stage, without allowing them? What if they have a pile of evidence that they come up with case after case, instance after instance, where exactly the same thing happens? They do this after some discovery, and they discover or they find out. South Bend is not that big a place, as I recall, and the list of cases is probably not that long. And let's say they come up with 20 or 25 cases where exactly the same thing happened over the course of five years. We would be remiss if we let this go and didn't give them the chance to come up with that kind of evidence. I mean, this is the kind of thing that, if it is going on, needs to stop. It needs to be put an end to. I agree that if this thing is going on, I would skew that it is. But if this is going on, I agree that it needs to stop. But I would also point out to the Court that there is a proper plaintiff in all these cases. It isn't Ms. Park. It's the people who are losing their freedom. Whatever liberty interests they have, when the laws are being improperly enforced against them, those are the proper plaintiffs, not Ms. Park. You know, I've heard you say that two or three times now, but it seems to me those are the weakest people, because they, you're going to come back and say, quite rightly, listen, what have you got to complain about? Were you drunk driving? Yes. Were you speeding? Yes. Did you, you know, so what cause do you have to complain about the fact that somebody else, we want some easy or somebody else, you're the last person to complain, because you deserve to be punished. But there's nothing that Ms. Park did that has involved any fault on her part at all. There's no, there's no, you can't say, well, you know, you can't complain because you are just as guilty or just as much for, all she was doing is driving down a highway, minding her own business, as best as the record shows, staying within the speed limit and driving in a safe manner. And this guy crosses the median and slams her head on. So why is the guy who later on that evening does the same thing as Mr. Barbauta, drives from there, why is he a better plaintiff? In what sense is he a better plaintiff? He's only a better plaintiff in that he actually has damages. There's causation there. There's no causation at all. He's not in any way impacted by the discriminatory policy. They enforce the law as to him the way the law is supposed to be enforced. He's got no beef. He's got no Congress will beef. And by God, he should not get any relief at all. I mean, he should, you know, whatever they do to Brian Davis, you know, suspend his license or send him to jail, you know, whatever it does. And he has no cause to complain. It seems to me that if anybody has a cause to complain, it is either Ms. Park, who was actually injured, or maybe the rest of the citizens of the island who are put at risk by this policy that exists. Well, I will say that I understand the court's point. And I do understand that the individual who was arrested later that night, you know, isn't… He was coming. He's got what he was coming for. I completely agree that he got what was coming to him, but it's still… But you also have to agree that if you had been, well, let's not make it personal, but some reasonable person in Ms. Park's position who had gotten hit by a drunk driver and she sees the police conning that person, she's got a doctor who says, look, this guy is really drunk. The police ought to do something. And the police say, oh, no, no, you know, he's not, you know, it's fine. Don't worry about it. Well, let him go. But she would have, I mean, whether she has a legal claim or not, she would have a good, legitimate claim to be really unhappy about that. That person… I completely agree. Whereas the guy who gets stopped two hours later driving drunk has no legitimate reason at all. I would agree with you that Ms. Park or anyone else on the factual edge has a legitimate reason to be angry. I would also say that they aren't injured in any real sense. There isn't any benefit that has been denied Ms. Park that wasn't owed her. And that's the… I'm not… And I think the court understands. I'm not trying to say that… She was denied a good investigation. She was denied a good investigation. And if the court… Which would have helped her in her civil case. I agree it would have helped. But I don't believe that the denying of a good investigation that helps in a civil case is enough to trigger the U.S. Constitutional protections. And with that, I know I'm over again. So I don't have anything to add. All right. Thank you. Cajun Sargassum and Senator Milley. I think you have tried to settle this case without success. We did try to settle the case over the Ninth Circuit mediation. And Ms. Park is very unhappy. There you are. Both of you. There we are. Okay. Thank you. Cajun Sargassum.
judges: Kozinski, Bybee, Callahan